1  J. DAVID HADDEN (CSB No. 176148)
   FENWICK & WEST LLP
2  Silicon Valley Center
   801 California Street
3  Mountain View, CA 94041
   Telephone: (650) 988-8500
4  Facsimile: (650) 938-5200

5  Attorneys for Plaintiff
   ELEGENT TECHNOLOGIES, INC.

6

7

8               UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10                 [San Francisco Division]

11  ELEGENT TECHNOLOGIES INC.,          Case No.

12              Plaintiff,              **COMPLAINT FOR VIOLATION OF
                                        SHERMAN ANTITRUST ACT**
13      v.                              **SECTIONS 1 AND 2; UNFAIR
                                        COMPETITION UNDER CALIFORNIA**
14  DOLBY LABORATORIES, INC.,           **BUSINESS AND PROFESSIONS CODE
                                        § 17200, ET SEQ; SPECIFIC**
15              Defendant.              **PERFORMANCE OF CONTRACTUAL
                                        OBLIGATION; DECLARATORY**
16                                      **JUDGMENT OF PATENT MISUSE AND
                                        UNENFORCEABILITY; COMMON LAW**
17                                      **FRAUD; AND FRAUD IN THE
                                        INDUCEMENT.**

18                                      **DEMAND FOR JURY TRIAL**

19                                      Date of Filing: No Date Set

20

21      Plaintiff Elegent Technologies Inc. ("Elegent"), by and through its undersigned counsel,

22  alleges as follows:

23                            **I.**
                 **INTRODUCTION AND NATURE OF ACTION**

24      1.      This action arises out of a pattern of interconnected anticompetitive actions by

25  Defendant Dolby Laboratories, Inc. ("Dolby") described in more detail below. Through the

26  actions challenged in the case, Dolby has illegally obtained and maintained monopoly power over

27  the dominant method for coding and decoding compressed audio signals used in DVDs and

28  HDTV and over the implementation of the related industry standard on which a wide variety of

COMPLAINT
                                          1        23633/00402/LIT/1175464. 13Case No. _____

1  J. DAVID HADDEN (CSB No. 176148)
   FENWICK & WEST LLP
2  Silicon Valley Center
   801 California Street
3  Mountain View, CA  94041
   Telephone: (650) 988-8500
4  Facsimile:  (650) 938-5200

5  Attorneys for Plaintiff
   ELEGENT TECHNOLOGIES, INC.
6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                      [San Francisco Division]

11  ELEGENT TECHNOLOGIES INC.,          Case No.

12              Plaintiff,              **COMPLAINT FOR VIOLATION OF
                                        SHERMAN ANTITRUST ACT
13      v.                              SECTIONS 1 AND 2; UNFAIR
                                        COMPETITION UNDER CALIFORNIA
14  DOLBY LABORATORIES, INC.,           BUSINESS AND PROFESSIONS CODE
                                        § 17200, ET SEQ; SPECIFIC
15              Defendant.              PERFORMANCE OF CONTRACTUAL
                                        OBLIGATION; DECLARATORY
16                                      JUDGMENT OF PATENT MISUSE AND
                                        UNENFORCEABILITY; COMMON LAW
17                                      FRAUD; AND FRAUD IN THE
                                        INDUCEMENT.**

18                                      **DEMAND FOR JURY TRIAL**

19                                      Date of Filing:  No Date Set

20

21      Plaintiff Elegent Technologies Inc. ("Elegent"), by and through its undersigned counsel,

22  alleges as follows:

23                                   **I.
                        INTRODUCTION AND NATURE OF ACTION**

24      1.      This action arises out of a pattern of interconnected anticompetitive actions by

25  Defendant Dolby Laboratories, Inc. ("Dolby") described in more detail below.  Through the

26  actions challenged in the case, Dolby has illegally obtained and maintained monopoly power over

27  the dominant method for coding and decoding compressed audio signals used in DVDs and

28  HDTV and over the implementation of the related industry standard on which a wide variety of

COMPLAINT                                  1        23633/00402/LIT/1175464. 13Case No. _____

*FENWICK & WEST LLP*
*ATTORNEYS AT LAW*
*MOUNTAIN VIEW*

consumer products are based.  Dolby's market dominance is based in large part on the adoption of

its patented methods in the industry standard known as ATSC A/52.  The decision to base the

A/52 standard on Dolby's patented methods was based expressly on its promise to license its

patents under reasonable terms and conditions that are demonstrably free of any unfair

discrimination.

2.     In deciding to develop a product for playing DVDs and HDTV, Elegent was aware

of the industry standard and relied on the assumption that it would be able to obtain a license to

any necessary patents under reasonable terms and conditions that are demonstrably free of any

unfair discrimination.  Subsequent events show that Dolby never intended to abide by its promise.

Its mandatory license includes a number of requirements that are either independent violations of

the antitrust laws or misuse of Dolby's patents, or both.  Because a company must have a license

for Dolby's patents to utilize the industry standard necessary to decode standard DVDs and

HDTV broadcasts, the license is an essential facility.  By denying Elegent a license for its patents

and the ability to implement the industry standard in its products, Dolby has not only harmed

Elegent, but also has harmed competition by denying consumers access to a new and convenient

technology.

3.     Elegent seeks both affirmative monetary and injunctive relief under state and

federal law and a declaratory judgment of patent misuse as an affirmative defense against any

infringement action that Dolby might bring against Elegent.  Elegent seeks damages and

injunctive relief for violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2;

actual and punitive damages for fraud; injunctive relief, restitution and disgorgement of benefits

for Dolby's unfair competition in violation of California Business and Professions Code

§§ 17200, *et seq.*; specific performance of Dolby's promise to license its patents under reasonable

terms and conditions that are demonstrably free of any unfair discrimination; and a declaratory

judgment finding that Dolby patents are unenforceable because of Dolby's misuse and that Dolby

is estopped from suing Elegent for infringement for actions taken in reliance on Dolby's promises

to the standard-setting organization.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

COMPLAINT

2

23633/00402/LIT/1175464. 12Case No. _____

## II.
## JURISDICTION

4.      This action arises under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2; the Declaratory Judgment Act, Title 28 of the United States Code §§ 2201 and 2202; Title 35 of the United States Code; and California Business & Professions Code §§ 17200, *et seq.*; and the common law of California.

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337, 1367 and 2201.

6.      This Court has personal jurisdiction over Dolby because a substantial part of the conduct that gave rise to this action occurred in the Northern District of California.  Dolby has purposefully directed its unfair patent licensing program toward Elegent, a resident of California; the cause of action herein arises from Dolby's forum-related contacts; Dolby has principal offices in California, including in San Francisco and Brisbane, California, both within the Northern District of California; and exercise of personal jurisdiction by this Court is reasonable and comports with fair play and substantial justice.

7.      Venue is proper in this District under Section 12 of the Clayton Act, 15 U.S.C. § 22, and under 28 U.S.C. § 1391, because defendant Dolby transacts business and is found within this District.

## III.
## INTRADISTRICT ASSIGNMENT

8.      Pursuant to Civil Local Rule 3-5(b) and 3-2(d), the intradistrict assignment to the San Francisco Division of the U.S. District Court for the Northern District of California is appropriate as the action or a substantial part thereof arises from Dolby's actions in San Francisco County.

## IV.
## PARTIES

9.      Elegent is a corporation organized under the laws of the state of California, with its principal place of business located in Fremont, California.  Elegent is a nascent private software company developing software solutions that extend the capabilities of personal computers and

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

COMPLAINT

23633/00402/LIT/1175464.12Case No. _____

1    other consumer electronic devices.

2         10.    One of Elegent's innovative products is "etDVD" – an incredibly efficient

3    software program stored in the persistent flash memory of a personal computer (or other

4    consumer electronic device) that allows the personal computer to operate as an instant-on DVD

5    player and television.  With Elegent's etDVD software, a consumer is able to watch a DVD

6    movie or TV program on his or her computer without having to boot up the operating system or

7    access the hard drive.  etDVD currently plays DVD videodiscs and displays analog television and

8    will soon display digital and high definition television (HDTV) programs.  For a nominal cost, a

9    consumer can thus have his or her PC double as a home entertainment center.  Over time,

10   Elegent's etDVD software could become a ubiquitous standard feature built into millions of

11   personal computers.  Unfortunately, unless this Court stops Dolby's wrongful acts, consumers

12   may never have the opportunity to benefit from Elegent's innovative products.

13        11.    Upon information and belief, Dolby is a corporation organized under the laws of

14   the state of California, with principal places of business in California, including locations in San

15   Francisco, California, and Brisbane, California, both within the Northern District of California.

16        12.    Dolby is a multinational corporation that develops audio signal processing systems

17   and manufactures professional equipment to implement these technologies in the motion picture,

18   broadcasting, and music recording industries.  Dolby also licenses these technologies for use in

19   the consumer electronics industry.  Dolby owns certain patents on methods of coding, decoding,

20   and compressing audio signals while reducing unwanted noise.  Because the A/52 standard has

21   been based in part on methods covered by Dolby's patents, it is impossible to use the

22   A/52 standard without also using Dolby's patented methods.

**V.**
**BACKGROUND**

23

24

**A.    Incorporation of Dolby's Technology Into the Industry Standard**

25        13.    A DVD – or digital videodisc – is a type of optical disk technology commonly

26   used as a medium for digital representation of movies and other multimedia presentations.

27   A DVD can hold a full-length film of high quality video and audio. Consumers can play DVDs

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

COMPLAINT

23633/00402/LIT/1175464. 12Case No. _____

on DVD players ("DVD-Video") or on a personal computer ("DVD-Rom").  The audio portion of virtually all consumer DVDs available now is encoded using an industry standard known as A/52. As a result, all products that play DVDs must use the A/52 standard to decode the signal and produce the sound for the consumer.

14.    The Advanced Television Systems Committee, Inc., ("ATSC") is an international, non-profit organization formed to develop voluntary standards for digital television.  The ATSC has approximately 140 member organizations representing the broadcast, broadcast equipment, motion picture, consumer electronics, computer, cable, satellite, and semiconductor industries.

15.    When developed properly and with appropriate safeguards, standards can enhance competition and efficiency by allowing a large number of different manufacturers to produce products that will work together.  As this case illustrates, however, standards also have the potential to magnify the market power of certain companies.

16.    One of the key standards developed by the ATSC was the Digital Television Standard for high-definition television (the "HDTV standard"), which specifies a system designed to transmit high-quality video and audio.  In 1995, the FCC adopted the HDTV standard as mandatory.

17.    The HDTV standard incorporates the A/52 Digital Audio Compression ("AC-3") Standard as the required audio coding format.  By incorporating the A/52 coding format, the HDTV standard employs an audio compression system, which is interoperable across many different media, and is appropriate for use in a multitude of applications.  Because the FCC made the HDTV standard mandatory, the A/52 standard is now the required audio encoding format used in HDTV broadcasts.  A/52 is also the standard audio encoding format for DVDs.  Proper playback of HDTV broadcasts or DVD soundtracks require a decoder that adheres to the A/52 standard.

18.    Like most standard-setting bodies, to ensure an open playing field for all who desire to implement the standard, ATSC has a patent policy to which all contributors must agree. A true and correct copy of the ATSC Patent Policy is attached hereto as Exhibit 1.  ATSC's patent policy states:

COMPLAINT

23633/00402/LIT/1175464. 12Case No. _____

2.  Statement from Patent Holder

Prior to approval of such a proposed ATSC Standard, the ATSC shall receive from the patent holder (in a form approved by the ATSC Board of Directors) either: assurance in the form of a general disclaimer to the effect that the patentee does not hold and does not anticipate holding any invention whose use would be required for compliance with the proposed ATSC Standard or assurance that:

(a)     A license will be made available without compensation to applicants desiring the license for the purpose of implementing the standard, or

(b)     A license will be made available to applicants under reasonable terms and conditions that are demonstrably free of any unfair discrimination.

This assurance, along with a statement of the basis for considering such terms and conditions reasonable and free of any unfair discrimination, shall be submitted to the ATSC Board of Directors for review.

19.     In order to have its coding scheme, known as AC-3, considered for inclusion in the standard, Dolby committed to the ATSC that it would license its patents "under reasonable terms that are demonstrably free from any unfair discrimination." A true and correct copy of Dolby's Patent Statement to the ATSC is attached hereto as Exhibit 2.

20.     The AC-3 format developed by Dolby Laboratories was but one of several possible audio encoding schemes available for inclusion in the HDTV standard. Dolby convinced the ATSC to incorporate AC-3 into the HDTV standard by committing to the ATSC patent policy and thus ensuring that the standard would be open to be implemented by a wide range of companies.

**B.    Dolby's Refusal to License Its Patents to Elegent**

21.     Dolby has failed to keep the promise that it made to the ATSC. Despite Elegent's repeated requests, Dolby has refused to make its patents available to be licensed under reasonable and nondiscriminatory terms. On information and belief and based upon its subsequent conduct, Dolby never intended to license its patents on the terms it promised.

22.     Dolby maintains a two-tier license structure, composed of Implementation Licenses and System Licenses. A true and correct copy of Dolby's Implementation License and

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

COMPLAINT

6

23633/00402/LIT/1175464. 12Case No. _____

1    System License are attached hereto as Exhibits 3 and 4, respectively.  As described by Dolby, its

2    Implementation License typically grants permission to take a core licensed technology, such as

3    Dolby Digital (Dolby's trademark for what was supposed to be the open A/52 standard), and

4    develop an integrated circuit (IC), a hardware module (subsystem), or a software algorithm that

5    achieves the key functions often tailored for specific product applications.  Dolby requires that

6    "component developers" – companies that develop, for example, chips or software – obtain an

7    Implementation License and only sell components to entities that have taken a System License.

8    A System License grants a company permission to manufacture and sell products to consumers

9    containing Dolby's licensed technologies.  Dolby requires manufacturers of consumer products or

10   personal computers who want to obtain a System License to only buy components from suppliers

11   who also have an Implementation License from Dolby.  Because Dolby requires that all

12   Implementation Licensees only contract with System Licensees, and vice-versa, Dolby uses its

13   two-tier licensing structure to foreclose opportunities to any potential competitors in either

14   market.

15          23.     In order to operate, Elegent's etDVD software needs to decode A/52 encoded

16   DVD audio tracks.  Thus, Elegent sought a license from Dolby for the patents required to

17   implement the standard.

18          24.     Elegent sought a license for the patents pursuant to the terms of the ATSC, but

19   Dolby refused.  Dolby indicated that it would only agree to license its patents if Elegent also

20   licensed Dolby's implementation, including Dolby's own software and "know how."  Elegent

21   explained that it had its own implementation of the A/52 standard for etDVD and had no need for

22   Dolby's and that the small size and computational efficiency of Elegent's implementation

23   provided a unique competitive advantage.

24          25.     After Elegent's last request for a license to the patents alone under the "reasonable

25   terms and conditions that are demonstrably free of any unfair discrimination" required by the

26   ATSC patent policy, Dolby responded with a threatening e-mail accusing Elegent of patent

27   infringement.  Dolby acknowledged that it is required to license its AC-3 technology on

28   "reasonable and nondiscriminatory terms for DVD and ATSC applications," but again refused to

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

COMPLAINT

7

license its patents under such terms. Instead, in the e-mail, Dolby demanded that Elegent provide Dolby with a complete accounting of: (1) all manufacture, use and distribution by or for Elegent of any and all products utilizing any Dolby proprietary technology; and (2) a complete description of each type of such product (model name, feature set, number of output channels, configuration, etc.); and (3) the quantity of each type (including all copies made); and (4) all recipients of such product and their contact information (with quantity and type breakdown for each). In context, Dolby's refusal to license and the demands that it made upon Elegent indicate an intent by Dolby to sue rather than to negotiate. As a result, Elegent has a reasonable anticipation of infringement litigation by Dolby. This dispute with Dolby is having a seriously adverse effect on Elegent's ability to develop its business.

26. Dolby's bellicose response and forced bundling of unpatented and unwanted technology is contrary to its commitments to the ATSC. These onerous terms simply do not resemble the "reasonable terms and conditions that are demonstrably free of any unfair discrimination" terms required by the ATSC.

27. Not only did Dolby fail to honor its commitment to the ATSC in exchange for the incorporation of AC-3 into the standard, it appears that Dolby never intended to keep the promise of licensing its patents "under reasonable terms and conditions that are demonstrably free of any unfair discrimination." Rather, on information and belief, Dolby defrauded the ATSC into incorporating the AC-3 format into the standard without any intention of making its patents available under reasonable and nondiscriminatory terms, so that others, besides Dolby, could implement what was supposed to be an open standard.

**C.      Dolby Has Breached Its Promise to the ATSC**

28. Dolby has breached its promise to the ATSC in at least three fundamental ways.

29. First, despite requests from Elegent and perhaps others, Dolby has refused to license its patents. Rather, Dolby has insisted upon granting licenses for its patents only if the licensees also agree to base their use of the patented methods on Dolby's particular implementation, including source code and system requirements and other know-how. Dolby's requirement is inconsistent with normal industry practice. Indeed, the video standards established

COMPLAINT

23633/00402/LIT/1175464. 12Case No. _____

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

by ATSC are based on certain patented methods. The owners of those patents license the patents and allow the licensees to develop their own implementations.

30. Elegent does not need or want Dolby's implementation. Elegent's implementation is smaller and more efficient than the competition. In addition, given the structure of the overall licensing fees, which are predominantly for Dolby's implementation and other non-patent intellectual property, Elegent cannot afford the only license that Dolby offers. Elegent could, however, afford to license the patents for the royalties that are specifically attributed to the patents.

31. Second, the license demanded by Dolby is not "demonstrably nondiscriminatory" as Dolby promised it would be. To the contrary, it is demonstrably discriminatory under well-established antitrust principles. The required license payments are based on a quantity discount schedule that dramatically favors the largest users and disadvantages the smallest ones. The second tier of Dolby's licensing scheme requires per unit royalties for its bundled implementation that begin at $2.08[1] per unit audio channel for volumes up to 10 thousand units per quarter per system manufacturer and drops off as per quarter shipments reach a million units. To fully implement the A/52 standard requires six audio channels and thus a per-system implementation royalty of $12.48. The high initial per-unit rate for Dolby's unwanted implementation is a prohibitive barrier to entry for a new entrant with a low cost, software-only implementation like Elegent. In countries in which Dolby holds relevant patents, a licensee pays an additional nineteen cents per audio channel capped at $.57. Thus, the established patent royalty is a small fraction of the unwanted but force-bundled implementation royalty. In short, the price paid "per unit" by a small user, like Elegent, is far more than the price paid by the largest users, and the difference is even more striking when the licensee does not need and does not want anything more than the right to use the patented methods.

32. Third, as discussed below, the licensing arrangement demanded by Dolby involves practices that are both independent antitrust violations and well-established misuse of patent rights. Dolby's illegal business practices did not stop with its fraud upon the ATSC and its

---

[1] The explicit royalties in Exhibit 4 require a yearly adjustment based on the current consumer price index. Rates specified in this Complaint reflect those adjustments.

COMPLAINT

23633/00402/LIT/1175464. 12Case No. _____

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

breach of contract. After establishing its technology as part of the standard, Dolby set up a licensing structure that is itself illegal and structured to perpetuate Dolby's monopoly in the current standard and any improvements to that standard. To demand a license with those material defects cannot be reasonable. To the contrary, such requirements are clear examples of patent misuse.

**D.    Dolby Requires Illegal Tying**

33.    Dolby illegally bundles its Implementation License with the license for its patents. As described above, Dolby conditions the license for its patents upon a licensee's agreement to also license its implementation. By bundling its patents with unwanted software and non-patent intellectual property, Dolby misuses its patents and violates the antitrust laws and its commitment to the ATSC.

**E.    Dolby Requires Illegal Exclusive Grant-Backs**

34.    Dolby's Implementation License contains an illegal grant-back provision. The license requires that any "Advancements" developed by the licensee must be exclusively licensed to Dolby. Dolby defines the Advancements to which it would gain exclusive rights to be modifications to its Audio Technology which "either (a) expand the applications to which the Audio Technology may be put, or (b) which would, if implemented replace or displace the Audio Technology in one or more commercial markets material to the Audio Technology." Dolby's exclusive grant-back is designed to discourage competitive innovation and insure the entrenchment of Dolby's monopoly. In light of Dolby's market power and the other circumstances of this case, this license requirement is an unreasonable and illegal restraint of trade in violation of both Section 1 and Section 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2.

**F.    Dolby Requires Royalty Payments for Expired Licenses**

35.    Dolby's license requires the payment of fees for both patented and unpatented intellectual property on the same basis so long as one patent is still in effect somewhere in the world. The result is that Dolby is continuing to extract payments under its patent monopolies after the patents that justify the payments have expired. Dolby also requires the payment of its implementation royalties for sales made in countries in which it has no patents. These licensing

COMPLAINT

23633/00402/LIT/1175464. 12Case No. _____

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    arrangements wrongfully extend the scope of the patent protection and are acts of patent misuse.

2    **G.       Relevant Markets**

3             36.     This case involves several interrelated relevant economic markets.

4             37.     There is a relevant product market for methods of audio compression and coding

5    ("audio methods market").  Dolby's AC-3 coding scheme is one such method.  The relevant

6    geographic market is the United States.  By virtue of its patents and the incorporation of its

7    patented AC-3 coding scheme in the A/52 standard, Dolby has monopoly power in this relevant

8    market.

9             38.     There is a relevant product market for implementations of the A/52 standard

10   ("audio implementation market").  The relevant geographic market for this market is the United

11   States.  The standard is a basic roadmap that all companies must follow if their products are to

12   meet the standard.  However, the particular ways of implementing the standard can vary and are a

13   proper subject of competition.  Implementations of the standard can either be licensed to other

14   companies to develop products using the standard or, as the case of Elegent, used by the company

15   developing the implementation to develop products using the standard.  Dolby has foreclosed that

16   competition by requiring licensees of its patents to use its basic implementation as the basis for

17   developing additional products based on the A/52 standard.  As a result of its illegal actions,

18   Dolby either has monopoly power in this relevant market or has a dangerous probability of

19   achieving such power.

20            39.     There is a nascent relevant product market for software for personal computers and

21   laptops using the A/52 standard in software that does not depend on the computer's hard drive to

22   play DVDs and HDTV ("instant-on software market").  Such software would offer consumers

23   benefits not available with existing implementations.  Although this market is separate from the

24   larger current market for conventional implementations of the A/52 standard for DVDs, the

25   development of software like Elegent's would provide an additional competitive threat to

26   companies using existing implementations.

27   **H.       Harm to Competition and Antitrust Injury**

28            40.     Dolby has hijacked what was supposed to be an open standard.  As described

COMPLAINT

11

23633/00402/LIT/1175464.12Case No. _____

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

above, because Dolby was successful in convincing the ATSC to adopt Dolby's AC-3 coding scheme as the A/52 standard, AC-3 is now the standard in the industry. In fact, Dolby proudly asserts on its website that "[e]very DVD player sold worldwide incorporates Dolby Digital decoding."

41.    After inducing the ATSC into incorporating AC-3 into the standard, Dolby promulgated an illegal licensing scheme to prevent competitors from developing alternative implementations of the standard. Dolby defrauded the ATSC into making it a monopolist, and now is imposing impossible licensing terms in order to maintain and expand that monopoly beyond the scope of its patents and in ways contrary to its commitment to the ATSC.

42.    By illegally bundling its implementation with the required patents, Dolby has leveraged the standard into a second monopoly over the implementation of the standard. This illegal bundling has foreclosed all alternative implementations of the standard and retarded innovation that would benefit consumers. In essence, Dolby has taken what was supposed to be an open standard and has converted it into a proprietary product controlled by Dolby. Consequently, innovators like Elegent are prevented from bringing better implementations and new products to the market.

43.    Further, by placing its "Dolby Digital" trademark on every implementation, Dolby further entrenches its monopoly in this second market and flaunts its control over what was supposed to be an open industry standard.

44.    The exclusive grant-back of all advancements on any technology related to the standard or Dolby's patents eliminates the incentive of licensees to develop valuable improvements and ensures further entrenchment and extension of Dolby's monopoly position over implementations of the current standard and any likely future standards. With its illegal exclusive grant-back requirement, Dolby suppresses its licensees' incentive to innovate by appropriating any innovations that its licensees may create that could undermine its dominant market position.

45.    Through its licensing requirements, Dolby requires licensees to pay royalties for patents that have expired or will expire before the end of the license. The required license fees do

COMPLAINT

12

23633/00402/LIT/1175464. 12Case No. _____

not change despite the reduction in the number of patents in the relevant jurisdiction. This license requirement in effect forces licensees to pay for patents after they have expired. This practice constitutes a misuse of the patents. Dolby also requires, as a condition for licensing its United States patents, that a licensee pay implementation royalties for sales in all countries, including those in which Dolby has no patents. This too is patent misuse.

46.     Elegent and other companies like it are consumers of the A/52 standard. The methods embodied in the A/52 standard are necessary inputs to the software designed by Elegent. As a result, like any consumer of a monopolized product, Elegent suffers antitrust injury when Dolby gains additional market power and then uses that power to exploit its customers. A core purpose of the antitrust laws is to protect consumers against monopolies and to assure to them the benefits of competition. The harm suffered by Elegent is of the type that the antitrust laws seek to avoid and flows directly from Dolby's violation of those laws.

47.     Dolby's actions also harm the ultimate consumers of products utilizing the A/52 standard. At present Elegent is effectively being denied the ability to sell its product. Thus consumers are being denied access to a new and promising software product. Even if Elegent were somehow able to afford a license to the Dolby implementation that Elegent neither needs nor wants, the dramatic volume discount favoring large users would mean that consumers would have to pay a disproportionately high price for Elegent's product.

## VI.
## CLAIM I

## VIOLATION OF SHERMAN ACT § 1 (TYING) AND MISUSE

48.     Elegent incorporates herein by reference the allegations of paragraphs 1 through 47 of this Complaint.

49.     There are separate markets for methods of audio compression and coding and implementations of the A/52 standard. There is separate demand for those products. Some companies like Elegent prefer simply to license the patented methods. Other companies prefer to license a complete implementation of the type now offered by Dolby, including the possibility of using the Dolby trademarks.

COMPLAINT

13

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

50. Dolby has required and coerced anyone who wants to license its audio compression and coding patents (the tying product) to also license its implementations of the A/52 standard (the tied product).

51. Dolby has market power over the audio technology covered by its patents and incorporated in the A/52 standard.

52. A substantial amount of commerce is involved in the licensing agreements mandated by Dolby and challenged in this case.

53. The effect of Dolby's tying arrangements has been to substantially harm competition in the market for audio technology software. Indeed, as a result of the illegal tying arrangements, Dolby has succeeded in extending its monopoly power from its patented audio methods to its implementations of the A/52 standard. In the absence of the illegal tie-ins, other companies, including Elegent, would provide separate and competing audio technology software to implement the A/52 standard. Because of Dolby's refusal to license its patents without its implementation of the A/52 standard, Elegent and other companies are foreclosed from competing in that market.

54. The purpose and effect of Dolby's tying are to foreclose entry of competitors into the audio implementation market, thereby restraining competition and limiting the choices of consumers.

55. Dolby's tie-ins are per se violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

56. Alternatively, Dolby's tie-ins are unreasonable and therefore violate Section 1 of the Sherman Act, 15 U.S.C. § 1.

57. Elegent has suffered antitrust injury as a potential competitor that is effectively foreclosed from competing with Dolby in the tied product market.

## VII.
## CLAIM II

### VIOLATION OF SHERMAN ACT § 2 (MONOPOLIZATION AND ATTEMPTED MONOPOLIZATION)

58. Elegent incorporates herein by reference the allegations of paragraphs 1 through

COMPLAINT

23633/00402/LIT/1175464. 12Case No. _____

Fenwick & West LLP
Attorneys At Law
Mountain View

57 of this Complaint.

59.     Dolby has monopolized the market for audio methods beyond the scope provided for by patent laws by fraudulently inducing the standard-setting organization into adopting Dolby's patented audio methods as the industry standard.  Once Dolby secured its monopoly by defrauding the standard-setting organization, it attempted to further expand its monopoly to areas beyond the scope of its patents by using its existing power to require all licensees to agree to illegal grant-backs.  The exclusive grant-backs operate as a disincentive for licensees to create improvements on the patented technology.  Any company that wants to compete in any market involving DVDs or HDTV or the devices that can play them must have a license from Dolby.  Accordingly, by removing its licensees' incentives to create better software, Dolby eliminates the most likely sources of technological challenge to its monopoly position and thus insures that competition is foreclosed in the audio methods market.

60.     As to the market for audio implementations, Dolby has willfully engaged in a course of conduct, including tying, in order to obtain a monopoly in that market.  Dolby already possesses monopoly power in the market for audio methods, and, through the anticompetitive conduct described herein, Dolby has or has attempted to expand that monopoly into the market for audio implementations.  Dolby has a significant share of the market for audio implementations and has a dangerous probability of success in monopolizing that market.  Dolby has acted with a specific intent to monopolize, and to destroy effective competition in, that market.

61.     Competition in the relevant markets has been restrained by Dolby's anticompetitive and unfair licensing practices alleged herein.  Dolby has injured competition in the relevant markets in violation of Sherman Act § 2, 15 U.S.C. § 2, in that, among other things, market entry has been foreclosed and consumer choice has been diminished in both markets.

62.     Elegent has suffered antitrust injury as a direct result of Dolby's actions in that Elegent is unable to compete in the audio implementation and instant-on software markets as a proximate result of Dolby's refusal to license its patents on reasonable and nondiscriminatory terms.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

COMPLAINT

23633/00402/LIT/1175464. 12Case No. _____

# VIII.
# CLAIM III

## VIOLATION OF SHERMAN ACT SECTION 2
## (DENIAL OF ESSENTIAL FACILITY)

63.     Elegent incorporates herein by reference the allegations of paragraphs 1 through 62 of this Complaint.

64.     Dolby has monopoly power over the relevant product market for audio methods in the United States by virtue of its patents and their incorporation in the A/52 standard.

65.     A license for Dolby's patents is essential for any company, like Elegent, that wishes to compete in a product market that is based on the A/52 standard.

66.     Elegent cannot duplicate the essential facility controlled by Dolby.

67.     Dolby has denied Elegent a license to its patents.  The license that Dolby has offered including both the patents, Dolby's implementation of the A/52 standard, and other Dolby intellectual property does not allow Elegent to compete in its markets.

68.     As result of Dolby's denial of an essential facility, Elegent has suffered antitrust injury as a result of being effectively barred from competing with Dolby for implementations of the A/52 standard and from introducing a new product in the instant-on software market that would provide great consumer benefits.

# IX.
# CLAIM IV

## VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS
## CODE SECTION 17200, ET SEQ.

69.     Elegent incorporates herein by reference the allegations of paragraphs 1 through 68 of this Complaint.

70.     In its efforts to strong-arm Elegent into taking a license to Dolby's non-patented technology, Dolby has engaged in conduct that constitutes an unlawful, unfair and/or fraudulent business practice within the meaning and spirit of Business and Professions Code § 17200, to-wit:

a.     Dolby's deliberate misuse of the patents-in-suit, a cognizable wrong under the patent laws of the United States, constitutes an unlawful, unfair and/or fraudulent business act or practice in violation of Section 17200, *et seq.*

COMPLAINT

23633/00402/LIT/1175464. 12Case No. _____

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1        b.      Dolby's acts of fraud upon the standard-setting organization and upon

2   Elegent constitute an unlawful, unfair and/or fraudulent business act or practice in violation of

3   Section 17200, *et seq.*

4        c.      Dolby's conduct also threatens to harm consumers by foreclosing

5   competition in the markets and thus diminishing consumer choices for audio implementations and

6   instant-on software. Such conduct constitutes unlawful, unfair and/or fraudulent business act or

7   practice in violation of Section 17200, *et seq.*

8        d.      As described above, Dolby's conduct also violates the federal antitrust

9   laws, in that such conduct restrains trade by attempting to assert a monopoly over technologies to

10  which the patents-in-suit do not apply. Such conduct constitutes unlawful, unfair and/or

11  fraudulent business act or practice in violation of Section 17200, *et seq.*

12       e.      To the extent that Dolby's conduct challenged herein does not violate the

13  antitrust laws, it involves the same policies as the antitrust laws and therefore constitutes

14  unlawful, unfair, and/or fraudulent business act or practice in violation of Section 17200, *et seq.*

15       f.      Further, Dolby's conduct violates Section 5(a) of the FTC Act,

16  15 U.S.C.§ 45(a), which prohibits "unfair methods of competition" and "unfair or deceptive acts

17  or practices" in or affecting commerce. Such conduct violating Section 5(a) of the FTC Acts

18  constitutes unlawful, unfair and/or fraudulent business act or practice in violation of

19  Section 17200, *et seq.*

20       71.     Pursuant to Business and Professions Code § 17203, injunctive relief is required to

21  put a stop to Dolby's unlawful, unfair and/or fraudulent business practices. Elegent has no

22  adequate remedy at law and is being irreparably harmed by Dolby's acts of unlawful, unfair

23  and/or fraudulent competition, and such harm will continue unless Dolby is enjoined by the

24  Court.

25       72.     Elegent is entitled to restitution and/or disgorgement of all benefits received by

26  Dolby pursuant to or in connection with its unlawful, unfair and/or fraudulent business practices,

27  as alleged herein.

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

COMPLAINT

17

23633/00402/LIT/1175464. 12Case No. _____

## X.
## CLAIM V

### SPECIFIC PERFORMANCE OF CONTRACTUAL OBLIGATION

73.     Elegent incorporates herein by reference the allegations of paragraphs 1 through 72 of this Complaint.

74.     Dolby agreed with the standards-setting organization that it would license to all other industry participants all of the required patents under reasonable terms and conditions that are demonstrably free of any unfair discrimination.

75.     Dolby's agreement was supported by adequate consideration and was fair, just and reasonable.

76.     Elegent is a third-party beneficiary of Dolby's agreement.

77.     Dolby breached its agreement by refusing to license to Elegent the required patents under reasonable terms and conditions that are demonstrably free of any unfair discrimination.

78.     Elegent has been damaged, and is threatened by further damage, by Dolby's refusal to license to Elegent.  Elegent has no adequate remedy at law for such damages.

## XI.
## CLAIM VI

### DECLARATORY JUDGMENT OF PATENT MISUSE
### AND UNENFORCEABILITY

79.     Elegent incorporates herein by reference the allegations of paragraphs 1 through 78 of this Complaint.

80.     Elegent alleges that the required patents are unenforceable because of Dolby's misuse of the same through its unfair and anticompetitive licensing program.  Dolby has misused its audio methods patents by unfairly refusing to license the patents in a non-discriminatory way on reasonable terms and conditions despite its commitment to the standard-setting organization.

81.     Dolby has further misused the patents by forcibly bundling its patents with unpatented and unwanted technology.

82.     Dolby has further misused its patents by including illegal grant-back provisions in its licenses.

COMPLAINT

23633/00402/LIT/1175464. 12Case No. _____

Fenwick & West LLP
Attorneys At Law
Mountain View

83.    Based on the above allegations, an actual controversy exists between Elegent and Dolby as to whether the claims of the patents are enforceable.

84.    Elegent seeks a judgment declaring that the claims of the patents are unenforceable.

## XII.
## CLAIM VII

## COMMON LAW FRAUD

85.    Elegent incorporates herein by reference the allegations of paragraphs 1 through 84 of this Complaint.

86.    Dolby made a false representation of a material fact when it promised the ATSC, the public, and all companies that utilize the A/52 standard in their products that it would make licenses to its patents available under reasonable terms and conditions that are demonstrably free of any unfair discrimination if the ATSC incorporated Dolby's patented AC-3 encoding scheme as the standard and companies developed products utilizing that standard.

87.    Dolby's representation was false because Dolby made the representation without any intention of performing it.  Dolby made the representation with the knowledge that it was false and that, once the ATSC incorporated Dolby's patents into the standard and companies developed products that would utilize the A/52 standard, Dolby would not fulfill its promise to license its patents under reasonable terms and conditions that are demonstrably free of any unfair discrimination.

88.    Elegent is a company that utilizes the A/52 standard in its product and thus is a member of the class that Dolby intended to deceive (Cal. Civ. Code § 1711).

89.    Dolby made the false representation with the intent to induce the ATSC into adopting Dolby's AC-3 coding scheme as a standard and with the intent to induce companies such as Elegent into developing products that rely upon Dolby's patents for their use;

90.    Elegent actually and justifiably relied upon Dolby's representation that it would make its patents available to be licensed under reasonable terms and conditions that are demonstrably free of any unfair discrimination.  In reliance on Dolby's representation, Elegent

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

COMPLAINT

23633/00402/LIT/1175464. 12Case No. _____

developed etDVD, which utilizes the A/52 standard.

91.     Knowing that the ATSC incorporated Dolby's patents into the standard and that Elegent has developed etDVD in reliance on Dolby's representation, and that Elegent must obtain a license to Dolby's patents to sell etDVD, Dolby now refuses to license its patents to Elegent on reasonable and nondiscriminatory terms and instead attempts to strong-arm Elegent into licensing its unwanted implementation.

92.     Elegent has been damaged by Dolby's false representation because it was induced into developing etDVD with the understanding that Dolby would license its patents under reasonable terms and conditions that are demonstrably free of any unfair discrimination.  It invested substantial amounts of time and money into the development of etDVD and is now foreclosed from selling its product due to Dolby's refusal to license its patents on reasonable and nondiscriminatory terms.

## XIII.
## CLAIM VIII

## FRAUD IN THE INDUCEMENT

93.     Elegent incorporates herein by reference the allegations of paragraphs 1 through 92 of this Complaint.

94.     The apparent consent of the ATSC to its contract with Dolby to incorporate Dolby's patented AC-3 coding scheme as the standard was not real, mutual or free in that it was obtained through fraud, as herein alleged.

95.     Dolby, knowing the representations to be false and with the intent to deceive the ATSC and to induce it into incorporating Dolby's patented AC-3 coding scheme in the standard, falsely and fraudulently represented to the ATSC that it would license its patents under reasonable terms and conditions that are demonstrably free of any unfair discrimination if the ATSC would incorporate its patented coding scheme as the standard.

96.     Dolby's representation was in fact false, because Dolby made the promise with the intention of not performing it, and with the intent to induce the ATSC to rely on Dolby's statement.

Fenwick & West LLP
Attorneys At Law
Mountain View

COMPLAINT

23633/00402/LIT/1175464.  12Case No. _____

97.     At the time Dolby made the representations, at the time the ATSC agreed to incorporate Dolby's patented AC-3 coding scheme as the standard, and at the time the ATSC did in fact incorporate Dolby's patented AC-3 coding scheme as the standard pursuant to their agreement, the ATSC did not know Dolby's representation was false, but believed it to be true and reasonably relied on the promise when the ATSC entered into the agreement with Dolby to incorporate Dolby's patented AC-3 coding scheme as the standard.

98.     As a proximate result of Dolby's representations, the ATSC was induced into making Dolby's patented AC-3 coding scheme the standard.

99.     Elegent has suffered substantial harm and injury as a result of Dolby fraudulently inducing the ATSC into incorporating it into the standard because Dolby has now hijacked the standard and refused to make licenses available on reasonable and nondiscriminatory terms, making it impossible for Elegent to sell its etDVD product.

## XIV.
## PRAYER FOR RELIEF

**WHEREFORE**, Elegent prays for judgment as follows:

A.     As to Claim I:  Injunctive relief prohibiting Dolby's illegal tying arrangement and an award of Elegent's actual damages resulting from the tying arrangement, trebled as provided by law, together with its costs and reasonable attorneys' fees;

B.     As to Claim II:  Injunctive relief prohibiting Dolby's illegal acts of monopolization and attempted monopolization set forth above and an award of Elegent's actual damages resulting from the monopolization and attempted monopolization, trebled as provided by law, together with its costs and reasonable attorneys' fees;

C.     As to Claim III:  Mandatory injunctive relief requiring Dolby to provide Elegent a license to its patents on a reasonable basis and an award of Elegent's actual damages resulting from its denial of access to the essential facilities, trebled as provided by law, together with its costs and reasonable attorneys' fees;

D.     As to Claim IV:  Injunctive relief prohibiting Dolby's unlawful, unfair and/or fraudulent business practices and restitution and/or disgorgement of all benefits received by

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

COMPLAINT

23633/00402/LIT/1175464. 12Case No. _____

Dolby pursuant to or in connection with its unlawful, unfair and/or fraudulent business practices, in an amount to be proven at trial, but in excess of the jurisdictional minimum of this Court, arising from Dolby's business practices;

E.      As to Claim V:  An order that Dolby specifically perform its contractual obligation to ATSC to which Elegent is a third party beneficiary by granting Elegent a license to all its audio methods patents required to implement the A/52 standard under reasonable terms and conditions, and without conditioning such license upon the licensing of Dolby's implementation;

F.      As to Claim VI:  A declaration that the patents-in-suit are unenforceable due to Dolby's acts of patent misuse until such time as the Court determines that misuse has been purged;

G.      As to Claim VII:  Compensatory damages and punitive damages in an amount necessary to punish Dolby;

H.      As to Claim VIII:  Restitution and punitive damages in an amount necessary to punish Dolby.

I.      A declaration that this case is exceptional under 35 U.S.C. § 285 and an award of Elegent's attorneys' fees, expenses, and costs in this action; and

J.      Such other and further relief as the Court may deem just and proper.


Dated:  October 13, 2003                FENWICK & WEST LLP
                                        J. DAVID HADDEN


                                        By: _____
                                                J. David Hadden

                                        Attorneys for Plaintiff
                                        ELEGENT TECHNOLOGIES INC.

COMPLAINT

22

23633/00402/LIT/1175464. 12 Case No. _____

1

## JURY DEMAND

2

Plaintiff Elegent demands a jury trial as to all issues so triable in this action.

3

4   Dated:  October 13, 2003

FENWICK & WEST LLP
J. DAVID HADDEN

5

6

7   By: _____

8                              J. David Hadden

9   Attorneys for Plaintiff
    ELEGENT TECHNOLOGIES INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW